ROGERS JOSEPH O'DONNELL
Dean D. Paik (State Bar No. 126920)
dpaik@rjo.com
311 California Street
San Francisco, California 94104
Telephone:  415.956.2828
Facsimile:  415.956.6457

Attorneys for Defendant
DOUGLAS JAE WOO KIM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>DOUGLAS JAE WOOD KIM,<br><br>　　　　　Defendant. | Case No. 3:21-CR-00164-CRB-1<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br>Date:　　June 16, 2023<br>Time:　　1:30 p.m.<br>Judge:　　Hon. Charles R. Breyer |

## I.  REPLY

The government's demand for data in this case went beyond mere IP addresses and basic subscriber information.  The government continues its brazen methods of unreasonable and unwarranted surveillance, and with today's technology the government reaches every facet of an individual's life by mandatory turn-overs from the largest technology companies in the world including Apple and Google.[1]

The government summarily asserts that *Carpenter v. United States*, U.S., 138 S. Ct. 2206 (2018) is a narrow decision which does not have applicability to the grand jury subpoenas issued to the wireless and tech companies in the present case.  Contrary to the government's contention, the rationale in *Carpenter* applies with full force and effect.  That is, the government can no longer hide behind the third party doctrine to conduct intrusive and warrantless data searches that function as a dragnet of a user's personal information transmitted via a cell phone.

The government argues that *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) supports its use of the expansive grand jury subpoena in this case but *Forrester* was limited to the collection of IP addresses and to/from addresses.  The subpoenas in the present case contained no such limitation, and the government received troves of information on Mr. Kim that spanned years.

Likewise, the grand jury subpoenas in this case are distinguishable from the administrative subpoenas issued in *United States v. Rosenow* because that holding similarly only applied to IP addresses and to/from addresses. 50 F.4th 715, 726 (9th Cir. 2022).  The administrative subpoenas in *Rosenow* were limited to requesting "basic subscriber information and IP log-in information." *Id.*  The present subpoenas are not so limited. *See* ECF No. 84, Stegner Decl. Exh. 1, DK-009389 ("Any and all subscriber and/or account

---

[1] The government concedes that the Google Payment Corporation grand jury subpoena requested underlying communications, ECF No. 90 at 2–3, n.1, so the Court should unquestionably invalidate that subpoena. *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1090 (9th Cir. 2016) (emails are to be treated as closed addressed packages for expectation of privacy purposes).

information from inception to the present for the following accounts, including, but not limited to the following records and information . . .").

While the subpoena to Facebook in *Rosenow* triggered an internal review of the defendant's account activity including "messages, timelines, photos, IP addresses, and machine cookies," the face of the administrative subpoena was not so broad. *Rosenow*, 50 F.4th at 726–27. The Ninth Circuit's ruling in *Rosenow* was limited to applying the standard in *Forrester* that IP addresses and basic subscriber information do not trigger Fourth Amendment scrutiny. *Id.* at 738. To the contrary, the grand jury subpoenas' expansive descriptions of data in the present case trigger Fourth Amendment Scrutiny under *Carpenter*.

The government concedes that the data produced by Apple was voluminous. ECF No. 90 at 8. The volume of data is indeed material to Mr. Kim's claims that the subpoenas violated the Fourth Amendment. But the government claims that Mr. Kim knowingly and willingly provided the information to Apple to use their products. *Id.* This contention, however, is refuted by the production themselves. *See* Stegner Decl. in support of Mot. to Suppress ("Stegner Decl."), Exh. 2, DK-003903.

Apple's grand jury return relating to iMessage activity provides:

> These logs also include auto queries sent to IDS without user action. Apple can not [sic] determine whether any actual iMessage communication took place on the basis of the IDS iMessage Capability Query logs. An IDS iMessage capability query log does not confirm that a user actually sent or attempted to send an iMessage.

*Id.* By this explanation, Apple is clearly producing data that requires no voluntary or affirmative action by the user.

The non-voluntary nature of the production places the production squarely in the Supreme Court's holding that the rationale of "voluntary exposure" under the third-party doctrine did not apply to cell-site location information. *Carpenter*, 138 S.Ct. at 2220. "[A] cell phone logs a cell-site record by dint of its operation, without any affirmative act on the part of the user beyond powering up." *Id.* Similarly, the Ninth Circuit held that "e-mail to/from addresses and IP addresses are not merely passively conveyed through third party

equipment, but rather are voluntarily turned over" to the third party. *Forrester*, 512 F.3d at 510. Here, the Apple return explains that by the nature of the software's operation, queries that do not depend on affirmative user action are automatically sent to Apple. Stegner Decl., Exh. 2, DK-003903. The government cannot now *post facto* claim that it was only requesting material that was voluntarily provided to a third party. The inquiry is whether, on its face, the grand jury subpoenas contemplated that Apple would produce such data that was not voluntarily conveyed to a third party.

The inquiry begins and ends with the test of whether Mr. Kim had a subjective expectation of privacy in the data maintained by the wireless and tech companies and whether society recognizes this expectation of privacy as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The Court should consider whether the typical iPhone owner would believe that her iTunes history (Stegner Decl. Exh. 3, DK-006670), transaction history (Exh. 13, at 1), FaceTime call logs (Exh. 2, DK-003917), iMessage logs (including automated data sent to Apple) (Exh. 2, DK-003903), iCloud account details (Exh. 2, DK-003915), and associated IP address information (*see generally* DK-003889-3954) *from inception to present* would be beyond the scrutiny of Fourth Amendment protection because she somehow transmitted all that data to a third party to utilize their services.

The Court should conclude that the Fourth Amendment does not permit such a search without a warrant. And sadly, grand jury subpoenas of this type are all too commonplace in government investigations. The government will decry that it cannot possibly conduct an adequate investigation if it is required to pursue a warrant to obtain this information. Yet, the Supreme Court has disagreed with such contention in *Carpenter*, and the same reasoning applies with full force to the present facts.

Lastly, the Court should reject the government's contention that the evidence should not be excluded based on the good faith exception under *Davis v. United States*, 564 U.S. 229, 236–37 (2011). As indicated in this motion and Mr. Kim's accompanying motions to dismiss, *see* ECF Nos. 79, 80, the abuse of the grand jury process is significant and has

Page 3
DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE – Case No: 3:21-CR-00164-CRB-1

561651.2

1  implications broader than the case at hand.  In finding that the grand jury subpoenas violated
2  Mr. Kim's Fourth Amendment rights, the Court should also find that suppressing the
3  evidence will have a significant deterrent effect on future violations by law enforcement and
4  the government.

5  Only when law enforcement conducts a search based on objectively reasonable
6  reliance on binding appellate precedent, does the exclusionary rule apply.  *Davis*, 564 U.S. at
7  239.  In *Davis*, the police followed indisputable binding Eleventh Circuit precedent which
8  established a bright-line rule authorizing the search of a vehicle's passenger compartment
9  incident to a recent occupant's arrest.  *Id*.  While the Supreme Court later ruled that such a
10 search was unconstitutional under *Arizona v. Gant*, 556 U.S. 332, 344 (2009), at the time of
11 the search police followed the then-applicable law to the tee, and nobody disputed that.
12 *Davis*, 564 U.S. at 239.

13 Such is not the case under the present grand jury subpoenas.  Contrary to the
14 government's argument, the subpoenas were not limited to IP addresses and to/from address
15 lines in *Forrester*,  nor were they limited to IP addresses and basic subscriber information as
16 in *Rosenow*.  The grand jury subpoenas conducted a broad sweep of Mr. Kim's personal
17 digital data.  By concluding that the grand jury subpoenas to the wireless and tech companies
18 violated the Fourth Amendment, the Court must also conclude that the good faith exception
19 does not apply.

20 **II.    CONCLUSION**

21 For these reasons, the Court should find that the government needed a warrant
22 to conduct the widespread and invasive search that went beyond mere IP addresses and
23 to/from address lines.  *Carpenter* established a line in the sand for the government seeking
24 //
25 //
26 //
27 //
28 //

personal data of individuals from third party providers.  That line was crossed in the present case.

Dated:  May 24, 2023                    ROGERS JOSEPH O'DONNELL

                                                  By:  /s/ Dean D. Paik
                                                       DEAN D. PAIK
                                                       HENRY D. STEGNER

                                                       Attorneys for Defendant
                                                       DOUGLAS JAE WOO KIM

Page 5
DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE – Case No: 3:21-CR-00164-CRB-1

561651.2