```
 1  ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
 2
    MARTHA BOERSCH (CABN 126569)
 3  Chief, Criminal Division

 4  NOAH STERN (CABN 297476)
    MAYA KARWANDE (CABN 295554)
 5  Assistant United States Attorneys

 6     450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
 7     Telephone: (415) 436-7200
       FAX: (415) 436-7234
 8     Noah.Stern@usdoj.gov
       Maya.Karwande@usdoj.gov
 9
    Attorneys for United States of America
10
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 21-00164 CRB |
|---|---|
| Plaintiff, | ) **UNITED STATES' NOTICE OF NEW INFORMATION REGARDING DEFENDANT'S PRETRIAL RELEASE CONDUCT** |
| v. | ) |
| DOUGLAS JAE WOO KIM, | ) Judge: Hon. Charles R. Breyer |
| Defendant. | ) |

The United States hereby provides the Court newly discovered information regarding Defendant Douglas Jae Woo Kim's pretrial release conduct.[1]  On Monday, April 29, 2024, a new victim referred to herein as VICTIM 4 contacted the government, stating that Kim had stolen $160,000 from him between March and April 2024.  VICTIM 4 told the government that the last loan he gave to Kim was on April 21, 2024, five days *after* the government filed its motion to detain Kim for engaging in new fraud schemes in 2023, and the day before the hearing on the government's motion.  At that hearing, on April 22, 2024, Kim's counsel argued that Kim had self-corrected in January 2024 and had not been engaging

---

[1] For the sake of clarity, the newly discovered conduct occurred prior to the detention hearings on April 22 and 24, 2024, but was discovered by the government after the hearings.

US NOTICE                                                                 1
21-00164 CRB

in fraud in the months prior to the hearing. This was not true.[2]

On April 24, 2024 (after Kim had been remanded to custody for two days), the Court ordered that Kim be released on a $1 million secured bond to be supervised by pretrial services and his parents. The government continues to believe that there are no conditions that can adequately safeguard the community from the economic danger Kim poses. The government brings this new information to the Court's attention because the government believes it is significant new evidence demonstrating that detention is necessary to safeguard the community. If the new information affects the Court's determination of the issues relevant to the government's motion for detention, the government requests that this filing be treated as either a renewed motion for detention under 18 U.S.C. §§ 3148 and 3142(f) or, in the alternative, as a motion for leave to file a motion for reconsideration of the Court's release order dated April 24, 2024, and that the Court schedule a hearing for further consideration of Kim's release status or enter and order remanding him to custody.[3]

I. BACKGROUND AND LEGAL STANDARD

The relevant background of the charged offenses and the details of fraud scheme Kim executed in 2023 is set forth in detail in the United States Motion to Order Defendant Detained, filed April 16, 2024. Dkt. No. 157. Kim filed an opposition to the government's motion, Dkt. No. 163, and the Court heard additional proffers from the parties at a detention hearing on April 22, 2024. Dkt. No. 168. At the hearing, Kim's counsel proffered that Kim's new fraud scheme had ceased no later than January 2024, that he had self-corrected his conduct and not engaged in fraud in 2024, and that conditions could be

---

[2] The government is not suggesting that Kim's counsel was dishonest with the Court. Presumably he was unaware of the scope of Kim's conduct.

[3] A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Under the civil local rules, a party may file a motion for leave to seek reconsideration of any interlocutory order upon a showing of "a material difference in fact . . . from that which was presented to the Court before entry of the interlocutory order" or "[t]he emergence of new material facts . . . occurring after the time of such order." Civ. L.R. 7-9. In substance, because the Court has already found probable cause that Kim has committed a new crime, the Court should detain Kim if it finds that the new factual information presented here in connection with the record on the government's motion for detention, demonstrate that Kim is "unlikely to abide by any condition or combination of conditions of release" or "there is no condition or combination of conditions of release that will assure [Kim] will not . . . pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

fashioned to safeguard the community.  The government proffered that records from Kim's offshore gambling account showed that he was continuing to deposit funds to the account and bet on sports through the end of March 2024, suggesting that his fraud scheme was continuing, but that the government had not identified any victims defrauded by Kim in 2024.  On April 22, 2024, the Court ordered Kim remanded to custody, finding probable cause that Kim had committed a new crime.  Dkt. Nos. 167 & 168.  The Court ordered pretrial services to prepare a prebail report and set a further detention hearing for April 24, 2024.  *Id.*

On April 23, 2024, pretrial services filed a prebail report recommending that Kim be released from custody subject to numerous conditions, including that his parents serve as sureties on a secured bond, serve as custodians, and accompany Kim anywhere he traveled.  Dkt. No. 170.  On April 24, 2024, the Court held another detention hearing.  At the hearing the Court heard proffers from the parties and the government explained why, in its view, the conditions proposed by probation would not adequately safeguard the community.  The government explained, in part, that (1) the history of the case demonstrated that Kim's parents could not prevent Kim from engaging in fraud, including because Kim had defrauded numerous victims while living with his parents and had continued to engage in fraud despite evidence that his parents had provided the funds to pay back prior victims, (2) settlements with victims (presumably paid for by Kim's parents) called into question whether Kim's parents would be adequate custodians of Kim because the settlements with Kim's victims were structured in a way that may have been, in part, designed to impede the government's prosecution and investigation of Kim, and (3) the nature of Kim's schemes, including the use of numerous financial accounts, other individuals' identity documents, and a variety of Proton Mail accounts, made it impossible for the conditions proposed by pretrial to adequately safeguard the community.

After hearing the parties' proffers, and hearing from Kim's mother who stated that she and Kim's father would be willing to post their Hawaii property as security for the bond, the Court ordered Kim released from custody on a $1 million secured bond[4] with the conditions proposed by pretrial services, including computer monitoring and supervision by Kim's parents.

---

[4] Secured by $150,000 cash and the remainder by Kim's parents' property in Hawaii.

## II. NEWLY OBTAINED EVIDENCE

On Monday, April 29, 2024, a person referred to herein as VICTIM 4 emailed the government, stating that Kim stole approximately $160,000 from him between March and April 2024. Barnard Decl. Ex. E. VICTIM 4 explained in the email and in a subsequent interview with FBI that VICTIM 4 knew Kim from a high school trip to China on which their respective boarding schools went. *Id.* VICTIM 4 communicated with Kim sporadically throughout the years. *Id.* Then, in January 2024, Kim reached out to VICTIM 4 via LinkedIn. Barnard Decl. ¶ 5(b). VICTIM 4 spoke with Kim for a couple of months "catching up on life" during which Kim did not mention that he was fighting federal criminal charges for fraud. Ex. E. Kim expressed interest in cryptocurrency and interest in the fact that VICTIM 4 had purchased Ether in 2020 and 2021. *Id.* Kim told VICTIM 4 that he was buying portfolios of cryptocurrency in pools at discounts and then liquidating them to generate proceeds, and that he wanted loans to finance his operations. *Id.* & Barnard Decl. ¶ 5(c). Kim represented that he had assets that could cover the loans and that he was requesting the loans for liquidity purposes. *Id.* ¶ 5(f). Kim showed VICTIM 4 account information. *Id.* Kim's representations regarding his assets were obviously false in light of the information presented in the government's motion for detention, including that Kim owed substantial debts to VICTIM 3. Dkt. 157 at 15-20. Presumably the account information Kim showed VICTIM 4 was forged or false,[5] as Kim did this with prior victims, the account information the government obtained for Kim's accounts in late 2023 showed minimal assets, Dkt. 157-1 ¶ 36, and Kim told pretrial services on April 22, 2024 that he had minimal assets and no income. Dkt. 170.

Beginning on March 12, 2024, VICTIM 4 began loaning Kim Ether, and continued extending additional loans of Ether through April 21, 2024, the eve of the detention hearing at which Kim was remanded to custody. Barnard Decl. ¶ 5(d). In total, VICTIM 4 loaned Kim Ether worth approximately $160,000. *Id.* ¶ 5(j). During this time period, Kim provided VICTIM 4 two checks purportedly to pay back loans. *Id.* ¶ 5(h). The first, smaller check, bounced and VICTIM 4 did not attempt to cash the second check. *Id.* Based on Kim's pattern of conduct, it appears likely that Kim provided VICTIM 4 these checks to provide assurances that he would pay back earlier loans in order to convince VICTIM 4

---

[5] The government has not yet obtained documents from VICTIM 4.

to make additional loans.  *See, e.g.*, Dkt. 157 at 10-11, 20.  VICTIM 4 would not have extended the loans to KIM if he had known KIM would use the proceeds for any other purpose than what KIM had said he needed the loans for—buying crypto portfolios to sell at a profit.  Barnard Decl. ¶ 5(k).

The government has not yet obtained the records necessary to trace the Kim's use of the loans VICTIM 4 provided.  However, the consistent pattern in which Kim has used victims' loans over the course of his schemes demonstrates that is likely that Kim transferred the loan proceeds to offshore gambling sites to bet on sports.  Indeed, the loans from VICTIM 4 may explain some of the March 2024 deposits in Kim's Fairlay account, records of which the government provided the Court at the hearing on April 24, 2024.

## III.     REQUEST FOR RECONSIDERATION

The government requests the Court reconsider its prior ruling ordering Kim released on bond in light of the new information that Kim continued to defraud victims up until the day before the Court remanded Kim (temporarily) to custody.  The fact that Kim continued to defraud victims *after the government had filed a motion to detain him for defrauding new victims while he was on pretrial release* is a material new fact that confirms that he is not likely to abide by the conditions of his release and that the only thing that will stop his fraud schemes is detention.  Indeed, defense counsel's firm representation at the detention hearing that Kim had self-corrected and was no longer engaging in fraud shows that there is no basis for the Court to trust that Kim will abide by the conditions that the Court put in place, or that his parents can effectively prevent him from engaging in fraud.  Kim had, in fact, defrauded another new victim of approximately $160,000 of cryptocurrency in March and April 2024 with Kim soliciting the last loan the day before the detention hearing.  While the government presented the Court evidence at the detention hearings that Kim was likely continuing his scheme through March of 2024, the evidence provided by VICTIM 4 is of a different nature.  It confirms that Kim was continuing to solicit sizable loans based on false and misleading statements through the time period that the government was investigating Kim's 2023 schemes, and that he continued to do so even after he was put on notice that the government was investigating his new conduct and was seeking his detention.  Under Section 3148, the Court "shall" enter an order of detention if there is probable cause the defendant committed a new crime, and the Court finds either that (A) there are no conditions that can

assure the safety of the community *or* (B) the defendant is unlikely to abide by conditions of release. Kim's decision to continue to defraud people in the community between the time the government filed its motion and the Court's first hearing on the motion make clear that Kim is not likely to abide by the new conditions fashioned by the Court and he should be detained pending trial.

DATED:   May 1, 2024                           Respectfully submitted,

                                               ISMAIL J. RAMSEY
                                               United States Attorney


                                               _____/s/_____
                                               NOAH STERN
                                               MAYA KARWANDE
                                               Assistant United States Attorneys