IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>  Plaintiff,<br>  v.<br>DOUGLAS JAE WOO KIM,<br>  Defendant. | Case No. 21-cr-00164-CRB-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ACQUITTAL** |

In his post-trial motion, Defendant Douglas Kim moves for acquittal or a new trial (1) on all the money laundering counts due to an alleged merger problem, (2) on the foreign money laundering counts because Bitcoin is not a "monetary instrument," (3) on two counts because he did not make affirmative material misrepresentations to victim J.B. Kim also moves (4) for dismissal of several counts for lack of venue. The Court denies Kim's motion in large part, granting it only with respect to Kim's venue argument on two counts.

I.   **BACKGROUND**

In February 2025 the Court held a jury trial in this matter. See Dkts. 332, 333, 334, 335, 338, 343, 346, 349, 361, 364, 366, 379, 382, 384. The government had initially charged Kim with seventeen counts: seven counts of wire fraud (Counts 1–7), see 18 U.S.C. § 1343; seven counts of international promotional money laundering (Counts 8–14), see id. § 1956(a)(2)(A); and three counts of promotional money laundering (Counts 15–17), see id. § 1957. 2d Superseding Indictment (dkt. 195). At trial the Court severed Count 7—which concerned alleged criminal activity in 2023 and 2024, years after the conduct charged in the other sixteen counts—and granted Kim's motion of acquittal on

Count 14.[1]  Trial Tr. Vol. IX (dkt. 396) at 1958–66, 2116.  The remaining fifteen counts were submitted to the jury, and they returned a verdict of guilty on fourteen (all but Count 9, one of the international promotional money laundering counts).  Verdict (dkt. 402).  Kim now moves for dismissal, a judgment of acquittal, or a new trial on various counts.  Mot. (dkt. 426).

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 29(c)(1) provides that a defendant "may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."  The Court's task under Rule 29 is to view the evidence in the light most favorable to the prosecution and evaluate whether a rational juror could have concluded that the elements of the crimes were proved beyond a reasonable doubt.  United States v. Alarcon-Simi, 300 F.3d 1172, 1176 (9th Cir. 2002).  The government need not offer direct evidence of all elements of the crime; circumstantial evidence and reasonable inferences drawn therefrom can be sufficient to sustain a conviction.  United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992).

Federal Rule of Criminal Procedure 33(a) authorizes district courts to "grant a new trial if the interest of justice so requires."  "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."  United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992).  In considering a motion for a new trial, the Court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."  United States v. Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000) (citation omitted).  So even if there is an "abstract sufficiency of the evidence to sustain the verdict," a new trial may be granted where "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred."  Id. at 1097 (citation omitted).

---

[1] Kim now renews his motion to dismiss Count 7 for lack of venue.  Mot. at 13–14.  The Court **GRANTS** the motion and **DISMISSES** Count 7.

2

## III. DISCUSSION

Kim raises four separate arguments for acquittal: <u>First</u>, he contends that there is a merger problem on the money laundering counts that requires the Court to enter a judgment of acquittal. <u>Second</u>, he asserts that because Bitcoin is neither "funds" nor a "monetary instrument" for purposes of 18 U.S.C. § 1956(a)(2), the Court should enter a judgment of acquittal on the international money laundering counts under that statute. <u>Third</u>, he argues that the government failed to sufficiently prove the wire-fraud claim related to victim J.B., so the Court must enter a judgment of acquittal on that wire fraud claim and the corresponding money laundering claim. <u>Fourth</u>, he moves to dismiss three counts for lack of venue. The Court considers those arguments in turn.

### A. Merger

Kim's first argument is that he must be acquitted on all the money laundering counts because the conduct forming the basis for the money laundering—namely, the transfer of funds to gambling sites and to lenders—is the same as the conduct forming the basis for the wire fraud. This, he argues, presents a merger problem and precludes him from being convicted on both the wire fraud and money laundering counts. Mot. at 1–4.

Kim principally relies on a 2008 Supreme Court case, <u>United States v. Santos</u>, and its progeny in support of his argument. Mot. at 1–3 (citing <u>United States v. Santos</u>, 553 U.S. 507 (2008), <u>United States v. Van Alstyne</u>, 584 F.3d 803 (9th Cir. 2009), and <u>United States v. Bush</u>, 626 F.3d 527 (9th Cir. 2010)). The <u>Santos</u> Court held that a money-laundering conviction arising from payments to participants in an illegal gambling scheme "merged" with the defendant's illegal gambling conviction and therefore could not stand. 553 U.S. at 515 (plurality op.). The Ninth Circuit interprets <u>Santos</u> to mean that if the payments that form the basis of a money laundering conviction are "necessary for the [criminal] operation to continue" or a "central component of the 'scheme to defraud,'" they merge with the underlying criminal conviction and must result in acquittal. <u>Van Alstyne</u>, 584 F.3d at 815; <u>see also</u> <u>United States v. Halstead</u>, 634 F.3d 270, 279 (4th Cir. 2011) (merger problem where money laundering conduct was the "'essential expenses of

3

operating' the underlying crime"). But if the "transactions that created the criminally-derived proceeds [are] distinct from the money-laundering transaction," there is no merger problem. United States v. Wilkes, 662 F.3d 524, 545 (9th Cir. 2011); see also United States v. Allmendinger, 894 F.3d 121, 127 (4th Cir. 2018) ("[N]o merger problem arises 'when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering.'" (citation omitted)); United States v. Kennedy, 707 F.3d 558, 566 (5th Cir. 2013) (no merger problem where conduct was not an "ordinarily occurring aspect of the crime of wire fraud").

Whether Kim's money laundering convictions and his wire fraud convictions merge depends on the legal basis for both sets of convictions. Kim's wire fraud convictions were based on the misrepresentations that he made to his lenders about his intent to invest their money in cryptocurrency. His money laundering convictions, in contrast, were based on what he actually did with the money that he unlawfully obtained—namely, he gambled it in an effort to earn more money, pay back his lenders, and obtain more loans, thereby continuing his scheme. Yet what Kim did with the money was immaterial to his wire fraud conviction (except, perhaps, to the extent that it is circumstantial evidence of what he intended to do with the money at the time he spoke with the lenders).

In the line-drawing that courts have engaged in after Santos, this falls on the non-merger side. Kim's conduct in obtaining the loans was criminal due to his misrepresentations about his intent, not due to his later international gambling transactions through which he hoped to earn more money and continue his scheme. See Wilkes, 662 F.3d at 545 (no merger where the underlying transactions and the money laundering transactions are different). This is made apparent by the fact that, had Kim gambled the lenders' money and kept all the proceeds for himself—rather than using the proceeds to repay his lenders and thereby continue the scheme)—Kim's wire fraud convictions would stand but his money laundering convictions would likely fall. In short, the money laundering transactions were not necessary for Kim's wire fraud scheme to continue. See Van Alstyne, 584 F.3d at 815. There is therefore no merger problem.

4

**B.     Cryptocurrency Under International Money Laundering Statutes**

Kim's second argument is that the Court's instruction that "cryptocurrency is a form of funds or monetary instrument," see Trial Tr. Vol. XII (dkt. 399) at 2604, was improper. This argument has two parts: first, that the Court's instruction was legally incorrect because Bitcoin is neither a "monetary instrument" nor "funds" for purposes of 18 U.S.C. § 1956(a)(2)(A), which criminalizes the transport, transmission, or transfer of "a monetary instrument or funds from a place in the United States to or through a place outside the United States," or vice versa, "with the intent to promote the carrying on of specified unlawful activity;" and second, that the Court's instruction was procedurally improper because, even if Bitcoin is a form of "funds," the government charged him with transfer of a "monetary instrument," not "funds," and the Court constructively amended the indictment. 2d Superseding Indictment at 8. Either way, Kim asserts, his international money laundering convictions cannot stand. Mot. at 4–7.

**1.     Definitions of "Monetary Instrument" and "Funds"**

The government does not contest that Bitcoin is not a "monetary instrument," and that makes good sense. The international money laundering statute defines a "monetary instrument" as "(i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or (ii) investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery." 18 U.S.C. § 1956(c)(5). This definition does not appear to encompass Bitcoin, which is not the currency of any country and which, at the time of Kim's offenses, the SEC had declined to classify as an investment security. See Cipher Techs. Bitcoin Fund, SEC Staff Letter (Oct. 1, 2019), https://tinyurl.com/2syjsp3x (disagreeing with proposition that Bitcoin is a security).[2]

---

[2] Because the Court concludes that Bitcoin is not a security, the Court need not address United States v. McKye, which held that the determination whether a note is a security is a mixed question of fact and law. 734 F.3d 1104, 1108–10 (10th Cir. 2013).

5

There is ample support, however, for the government's contention that Bitcoin is a form of "funds" under the international money laundering statute. Multiple courts have held that Bitcoin is a form of "funds." See, e.g., United States v. Iossifov, 45 F.4th 899, 914 (6th Cir. 2022); United States v. Phillips, No. 22-CR-6058CJS, 2022 WL 16990050, at *5 (W.D.N.Y. Nov. 17, 2022), report and recommendation adopted, No. 22-CR-6058, 2023 WL 2775610 (W.D.N.Y. Apr. 4, 2023); United States v. Ologeanu, 18-cr-81-REW-MAS, 2020 WL 1676802, at *11 (E.D. Ky. Apr. 4, 2020); United States v. Ulbricht, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014); see also United States v. Budovsky, No. 13-cr-468-DLC, 2015 WL 5602853, at *14 (S.D.N.Y. Sept. 23, 2015) (virtual currency is "funds"). Though Congress did not define the term "funds," the ordinary meaning of that word is "available pecuniary resources"—or, in other words, money. United States v. Murgio, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016) (quoting Webster's Third New International Dictionary 921, 1663 (2002)); see also Clark v. Rameker, 573 U.S. 122, 127 (2014) ("funds" are "sums of money set aside for a specific purpose" (cleaned up) (quoting American Heritage Dictionary 712 (4th ed. 2000))). And the Supreme Court has recently described "money" in a capacious enough sense to include cryptocurrency like Bitcoin:

> [W]hen Congress adopted the Act in 1937, "money" was ordinarily understood to mean currency "issued by a recognized authority as a medium of exchange." Webster's New International Dictionary 1583 (2d ed. 1942); see also 6 Oxford English Dictionary 603 (1st ed. 1933) ("In modern use commonly applied indifferently to coin and to such promissory documents representing coin (esp. government and bank notes) as are currently accepted as a medium of exchange"); Black's Law Dictionary 1200 (3d ed. 1933) (in its "popular sense, 'money' means any currency, tokens, bank-notes, or other circulating medium in general use as the representative of value"); Railway Express Agency, Inc. v. Virginia, 347 U.S. 359 (1954) ("Money is a medium of exchange").

Wis. Cent. Ltd. v. United States, 585 U.S. 274, 277–78 (2018) (cleaned up). Cryptocurrency is commonly used as a medium of exchange, meaning that it easily qualifies as money under the Supreme Court's understanding of the term, and therefore also qualifies as "funds."

Thus, the Court's instruction to the jury was not incorrect as a matter of law.

6

### 2. Constructive Amendment

Kim points out, however, that the indictment charged him with transfer of a monetary instrument, not a transfer of funds, and therefore argues that the Court's instruction that Bitcoin is a form of monetary instrument <u>or funds</u> improperly amended the indictment. "A constructive amendment occurs when the crime charged is substantially changed at trial, so that it is impossible to know whether the grand jury would have indicted for the crime actually proved." <u>United States v. Lloyd</u>, 807 F.3d 1128, 1164 (9th Cir. 2015) (cleaned up) (citation omitted). This is most often the case when the trial evidence includes materially different facts than those presented to the grand jury. <u>See, e.g.</u>, <u>United States v. Ward</u>, 747 F.3d 1184, 1191–92 (9th Cir. 2014) (finding constructive amendment where jury heard testimony of more victims than named in the indictment and the charges did not specify a victim). Constructive amendment can also occur where "the court instructs the jury to convict on … substantially different crimes than those charged in the indictment." <u>United States v. Driggers</u>, 559 F.3d 1021, 1025 (9th Cir. 2009); <u>see also</u> <u>United States v. Davis</u>, 854 F.3d 601, 604–05 (9th Cir. 2017) (finding constructive amendment where the court added an additional grounds for criminal liability—whether the defendant "had a reasonable opportunity to observe" the victim to determine that she was underage—not present in the indictment).

But "a conviction may be sustained on the basis of a statute or regulation other than that cited or even where none is cited at all, as long as it is clear that the defendant was not prejudicially misled." <u>United States v. Lipkis</u>, 770 F.2d 1447, 1452 (9th Cir. 1985). Case law indicates that a defendant is not misled where the indictment is clear about the conduct charged, even if the indictment does not reflect the exact legal theory applied at trial. <u>See</u> <u>id.</u> (affirming conviction where the indictment charged the defendant under a statute criminalizing affirmative false statements on Medicare forms but the evidence at trial showed that the defendant merely omitted information in violation of a different statutory provision). Where "the different crimes involved distinct <u>conduct</u>," there may be constructive amendment, <u>id.</u> (emphasis added), but where the indictment suffices to put the

7

defendant on notice, there is not, United States v. Mickey, 897 F.3d 1173, 1183–84 (9th Cir. 2018) (explaining that constructive amendment occurs when the defendant "ha[s] no notice that he could be convicted" on the theory argued at trial).

Any disparity between the government's indictment and the Court's instruction to the jury does not rise to the level of a constructive amendment. The government clearly charged Kim with international money laundering based on his transfers of Bitcoin; indeed, the indictment specified six Bitcoin (or BTC) transfers as the basis of the § 1956(a)(2)(A) charges. See 2d Superseding Indictment at 8–9. Thus, Kim was on notice of the conduct for which he was being charged, even if the exact statutory term ("funds" versus "monetary instrument") changed at trial. This is not a substantial change and therefore is not an impermissible constructive amendment.

Because Bitcoin is a form of "funds" under the money laundering statute, and because the Court did not constructively amend the indictment by instructing the jury as such, Kim's Bitcoin argument fails.[3]

### C. Victim J.B.

Kim's third argument is specific to the two counts related to victim J.B.—the wire fraud count (Count 5) and the related money laundering count (Count 15). Kim asserts that the government failed to prove the wire fraud claim and, as a result, the money laundering claim also fails. Mot. at 7–10.

J.B. was a childhood friend of Kim's who loaned $30,000 to Kim. Trial Tr. Vol. V (dkt. 391) at 999–1000. Before Kim approached J.B. to request a loan, J.B. knew that Kim worked in financial services. Id. Kim and J.B.'s text exchange regarding a potential loan

---

[3] Kim raises an ancillary argument that the Court's instruction violates Federal Rule of Criminal Procedure 30(b), which requires the Court to inform the parties before closing argument as to how it intends to rule on their requested jury instructions. The Court did not address this issue before closing arguments because there was apparently no need to; it was not a disputed jury instruction. Rather, the Court only instructed the jury on the fact that Bitcoin is a form of funds after Kim argued otherwise to the jury. Trial Tr. Vol. XII at 2553–2555, 2556, 2563, 2568. This argument required a corrective instruction, which the Court properly gave without prejudicing Kim. Cf. United States v. Baker, 722 F.2d 343, 346–47 (7th Cir. 1983) (defendant "was not unfairly prejudiced by the trial judge's decision to correct an incorrect instruction").

was as follows:

> Kim: Sup bro? You feel like being a liquidity provider to DK Capital for one month, 5 percent.
>
> J.B.: LOL. What does that entail?
>
> Kim: Ha Ha. Just a loan for a month.

Id. at 1002. When J.B. asked about the risk, Kim responded: "No risk besides me dying. I will carry risk and guarantee out of my assets." Id. at 1003–04. There was no further discussion of Kim's assets. Id. at 1013. Later, after J.B. had indicated that he would give Kim money but before he actually did, Kim asked J.B. to send him money "in the next hour" because the "market is being very fruitful right now." Trial Ex. 611 at 2–3. J.B. testified that he made the loan based on his friendship with Kim. Trial Tr. Vol. V at 1014.

      Kim argues that he did not make affirmative misrepresentations to J.B. because his reference to "DK Capital" was a joke rather than a representation that he would invest J.B.'s money. Mot. at 9. Of course, the government did have to prove that Kim made affirmative misrepresentations, as opposed to proving that he merely omitted information, as the government never alleged or proved that Kim had a fiduciary duty to J.B.[4] See United States v. Shields, 844 F.3d 819, 822–23 (9th Cir. 2016). But the evidence, viewed in its totality and especially when taken in the light most favorable to the government, shows that J.B. thought that he was lending money to Kim for investment purposes and that Kim would guarantee the investment with his own assets. J.B. knew that Kim worked in financial services, and that background would necessarily inform Kim's mention of "DK Capital," his promise of being able to guarantee the loan out of his own assets, and his statements about the market "being very fruitful." Moreover, Kim's statements about the lack of risk are actionable here (as opposed to being purely aspirational statements) because of his affirmative assertions about assets that he did not actually have. Cf. In re

---

[4] Relatedly, Kim argues that the Court should order a new trial on these counts because the Court did not instruct the jury that they could not convict based on omissions alone. Kim did not request such an instruction, and in any case, the evidence related to J.B. was sufficient to permit a conviction based on affirmative misrepresentations.

Alphabet, Inc. Sec. Litig., 1 F.4th 687 (9th Cir. 2021) (statements that create a "misleading impression of a 'state of affairs that differed in a material way from the one that actually existed'" are not inactionable puffery (citation omitted)).

Thus, the Court finds that there was sufficient evidence for the jury to convict on Counts 5 and 15.

### D.     Venue

Kim's final argument is that the government failed to prove venue with respect to three counts and that those counts accordingly must be dismissed. The Court construes this as a Rule 29 motion for acquittal, as Kim's challenges are based on the evidence presented at trial. See United States v. Douglas, 996 F. Supp. 969 (N.D. Cal. 1998) (granting Rule 29 motion for failure to prove venue).

A criminal defendant's right to have his trial in the district in which the crimes were committed is guaranteed by Article III, § 2, cl. 3 of and the Sixth Amendment to the Constitution, as well as Federal Rule of Criminal Procedure 18. United States v. Evans, 62 F.3d 1233, 1236 (9th Cir. 1995); United States v. Corona, 34 F.3d 876, 878–79 (9th Cir. 1994). Congress has instructed that proper venue under 18 U.S.C. §§ 1956 and 1957 lies in "any district in which the financial or monetary transaction is conducted" or "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i)(1). "The government bears the burden of proving venue," though it only needs to prove venue by a preponderance of the evidence. Douglas, 996 F. Supp. at 972.

Kim challenges venue as to three counts: Count 13, Count 16, and Count 17.

**Count 13** involved Kim's July 12, 2019 transfer of Bitcoin from his Kraken account to Fairlay, a sports gambling platform. The government first argues that venue is proper because Kraken is located in San Francisco, but its sole evidence for that assertion is a 2025 document establishing Kraken's whereabouts. Opp. (dkt. 427) at 16. That is

10

insufficient to establish that Kim transferred funds into, out of, or through San Francisco in 2019.  See United States v. Ali, 266 F.3d 1242, 1244 (9th Cir. 2001) (proof of FDIC insurance at the time of trial insufficient to prove insured status at the time of the offense).  But Count 13, an international money laundering count, is based on an earlier wire fraud involving the victim C.R., who lived in San Francisco in 2019 and who transferred funds from there to Kim's Kraken account.  Trial Tr. at 1179; Trial Ex. 649 at 9.  Thus, venue in the Northern District of California was proper for the underlying wire fraud charge.  See United States v. Pace, 314 F.3d 344, 348–51 (9th Cir. 2002).  And because Kim instigated the underlying transaction, he "participated in the transfer of the proceeds of the specified unlawful activity from" the Northern District of California, meaning that venue remains proper there under 18 U.S.C. § 1956(i)(1)(B).

Kim cites the First Circuit's decision in United States v. Abbas to argue that § 1956(i)(1)(B) cannot apply here.  Reply (dkt. 428) at 10 (citing 100 F.4th 267, 283–88 (1st Cir. 2024)).  The First Circuit held that the funds that a defendant obtained via an underlying wire fraud were not "proceeds" of the wire fraud until they were in the defendant's possession or control, meaning that the transfer of those funds to the defendant was a "transfer[] to obtain proceeds," not a "transfer[] of proceeds."  100 F.4th at 286 (emphasis added).  Because the underlying transfer was not a transfer of proceeds, the First Circuit held, § 1956(i)(1)(B) did not provide venue in the district where the wire fraud was committed.  Id.

This Court does not interpret § 1956(i)(1)(B) so narrowly.  The statute, when read most naturally, provides for venue in the district of the underlying offense where the defendant participates in the transfer of the proceeds out of that district; it does not require that the defendant possess or control the proceeds in that district before the transfer.  See United States v. Carryl, No. 18-cr-291-MOC, 2019 WL 1139501, at *2 (W.D.N.C. Mar. 12, 2019) ("Section 1956(i) now expressly provides for venue … in any district where the underlying specified unlawful activity could be prosecuted if, as is the case as alleged here, the defendant participated in any way in transferring the funds out of that district."

11

(emphasis added)). The alternative reading adopted by the First Circuit would curtail the venue provision's use in the typical instances of wire fraud where, like here, a defendant commits fraudulently instigates an interstate financial transaction with himself at the receiving end. This interpretation would run counter to Congress's intent in adding the venue provisions to § 1956, which was to expand, not limit, proper venue for the money laundering statutes. See USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 1004, 115 Stat. 272, 392–93; see also Carryl, 2019 WL 1139501, at *2 (noting that Congress added the venue provisions in response to United States v. Cabrales, 524 U.S. 1 (1998), which narrowly interpreted the general venue statute as applied to money laundering offenses).[5]

Accordingly, venue is proper under 18 U.S.C. § 1956(i)(1)(B) for Count 13.

**Count 16** involved Kim's August 16, 2019 transfer from his Bank of America account to his Gemini cryptocurrency account. The government argues that it established venue by showing that Kim had a San Francisco address at the time of this transfer. Opp. at 17. But Kim also had a New York address at the time, see Trial Ex. 633 at 7, and the government provided no evidence actually linking the San Francisco address to Kim's bank account. This meager evidence connecting Kim to San Francisco does not satisfy the preponderance of the evidence standard, so the government failed to prove venue.

**Count 17** involved a June 2, 2020 transfer from Kim's Fidelity account to D.X.'s bank account in San Francisco. Trial Ex. 174 at 33; Trial Ex. 633 at 9. The government also offered evidence that both D.X. and Kim were living in San Francisco right before the transaction. See Trial Ex. 135 at 2 (discussing their addresses several blocks apart and indicating plans to meet up). Though circumstantial, this evidence is sufficient to establish—by a preponderance of the evidence and construing the evidence in the government's favor—that venue is proper in the Northern District of California.

---

[5] Kim suggests that Cabrales renders venue under § 1956(i)(1)(B) unconstitutional. Reply at 10. But Cabrales interpreted the general venue statute, 18 U.S.C. § 3237(a), not the Constitution's venue provisions. 524 U.S. at 6–9. No court has held § 1956's venue provisions unconstitutional. Moreover, the general venue statute specifically authorizes Congress to provide for more specific rules as to venue, so § 1956(i)(1)(B) does not conflict with § 3237(a).

## IV. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Count 7 and **ENTERS JUDGMENT OF ACQUITTAL** on Count 16.  The Court otherwise **DENIES** Kim's motion.

**IT IS SO ORDERED.**

Dated: September 8, 2025



CHARLES R. BREYER
United States District Judge