United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

USA,

Plaintiff,

v.

KIM,

Defendant.

Case No. 21-cr-00164-CRB-1

**ORDER ON MOTION TO ALTER JUDGMENT FOR RESTITUTION**

Douglas Jae Woo Kim was convicted on thirteen counts of wire fraud and money laundering stemming from a cryptocurrency fraud scheme. Verdict (dkt. 402). The Court entered a judgment on July 14, 2025. Judgement (dkt. 450). The Government now seeks to alter the judgment to require Kim to pay restitution to his victims. Mot. (dkt. 462). Kim opposes and argues, among other things, that he is entitled to a jury trial for restitution and that the Court should value restitution differently. Opp'n (dkt. 470-1). The Court rejects Kim's objections based on constitutional and certain victim-specific issues. The parties are ordered to meet and confer on their remaining victim disputes.

## I. LEGAL STANDARD

The Mandatory Victims Restitution Act ("MVRA") requires district courts to order, in certain categories of cases (including this one), restitution "to the victim of the offense." 18 U.S.C. § 3663A(a)(1). A victim is "a person directly and proximately harmed as a result of the commission of an offense." Id. 3663(a)(2). Their loss must be "caused by the specific conduct that is the basis of the offense of conviction." United States v. Gossi, 608 F.3d 574, 579 (9th Cir. 2010) (citation omitted). And a restitution award "can only include losses directly resulting from a defendant's offense." Id. (citation omitted). The

Government bears the burden of proving by a preponderance of the evidence both "that a person or entity is a victim for purposes of restitution" and "the amount of the loss." Id. (citations omitted).

## II. DISCUSSION

Kim makes a slew of arguments in opposition to the Government's motion. First, he argues that he is entitled to a jury trial for restitution. Opp'n at 2–7. Second, he urges the Court to construe the definition of the word "property" in the MVRA to exclude cryptocurrency. Id. at 8–11. Third, he asks the Court to value the victims' loss differently than the closing price of the cryptocurrency on the date of sentencing. Id. at 11–12. And fourth, Kim asserts that the Government's proposed restitution would violate the Excessive Fines Clause of the Eighth Amendment. Id. at 12–14. Separately, Kim makes victim-specific objections as well. Id. at 14–28. The Court rejects Kim's arguments and orders the parties to confer on the victim-specific issues of calculation and proof.

### A. Jury Trial

Kim asserts that the Government's motion violates the Fifth and Sixth Amendments as the Apprendi line of cases requires a jury trial for criminal restitution under the MVRA. Opp'n at 2. In the alternative, he argues that the Seventh Amendment would be violated because mandatory restitution is a legal remedy requiring a civil jury trial. Both arguments fail.

#### 1. Fifth and Sixth Amendments

In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). But it is Ninth Circuit law that "Apprendi doesn't apply to restitution." United States v. Green, 722 F.3d 1146, 1151 (9th Cir. 2013). And the Supreme Court has not extended Apprendi to restitution, either.[1] Nevertheless,

[1] Kim points to Justice Gorsuch's dissent from the denial of certiorari in Hester v. United States, 586 U.S. 1104 (2019), among other things, to argue that restitution requires jury fact-finding.

Kim argues that the Supreme Court's recent decision in Ellingburg v. United States has effectively overruled the Ninth Circuit's holding in Green. Opp'n at 2.[2] Not so.

In Green, the Ninth Circuit based its decision on two separate pillars of reasoning: (1) restitution under the MVRA was not "clearly" punishment and (2) Apprendi did not apply because there is no statutory maximum for restitution. Green, 722 F.3d at 1150–51. The Supreme Court, in Ellingburg, knocked down the first pillar. It held that "[r]estitution under the MVRA is plainly criminal punishment for purposes of the Ex Post Facto Clause."[3] Ellingburg v. United States, 607 U.S. 163, 166 (2026). But nothing in that decision addressed Apprendi or the lack of a statutory maximum for restitution—the other pillar in Green. That is why the Ninth Circuit recently rejected Kim's very argument. See United States v. Katz, No. 25-981, 2026 WL 1952743, at *2 (9th Cir. July 1, 2026) (refusing to disturb a district court's restitution order because Ellingburg "is not clearly irreconcilable with our decision in Green"). Accordingly, pursuant to Ninth Circuit law, Apprendi remains inapplicable to restitution under the MVRA.

Other courts have also repudiated Kim's position. Post-Ellingburg, two other district courts in the Ninth Circuit are in accord. In United States v. Zafaranchi, the court reasoned that "Apprendi applies only to determinate punishments" and has "no import" for restitution, which is an "indeterminate framework." 2026 WL 658435, at *2 (W.D. Wash. Mar. 9, 2026) (emphasis in original) (holding that Ellingburg has no impact on restitution). And in United States v. Shetty, the court concluded that Ellingburg did not affect Green and its progeny. 2026 WL 1593335, at *4 (W.D. Wash. June 3, 2026) ("Sixth Amendment concerns about statutory maximum punishments do not apply to the indeterminate

---

Opp'n at 2–4. But "dissents, of course, are not precedential." United States v. Ameline, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005).

[2] Kim only discusses the oral argument in Ellingburg, as the case was not decided at the time he filed his opposition. The Court conducts its analysis based on the Supreme Court's actual decision, which was the outcome Kim anticipated in his brief and discussed during the motion hearing.

[3] The Ninth Circuit also noted that its position on restitution not being clearly criminal punishment was on weak ground, acknowledging that the Supreme Court's characterization of restitution "chips away at the theory behind our restitution cases." Green, 722 F.3d at 1150.

framework established by the MVRA."). Even outside this circuit, in United States v. Alexander, the court concluded that Apprendi only required jury fact-finding where there was a statutory maximum, so Ellingburg did not affect restitution. 2026 WL 835779, at *2 (E.D. Mo. Mar. 26, 2026); see also United States v. Scott, 2026 WL 1878316, at *1 (D. Mass. June 30, 2026) (same). Moreover, other circuits that have addressed the issue have adopted the same reasoning as Green. See, e.g., United States v. Thunderhawk, 799 F.3d 1203, 1209 (8th Cir. 2015) ("Apprendi does not prohibit judicial restitution fact finding."); United States v. Milkiewicz, 470 F.3d 390, 403 (1st Cir. 2006) (same).

Accordingly, the Court concludes that the Government's motion does not violate the Fifth and Sixth Amendments.

**2. Seventh Amendment**

Kim argues that the request for restitution under the MVRA is the kind of "legal, not equitable, restitution that is subject to the Seventh Amendment." Opp'n at 6. But the Seventh Amendment does not apply to criminal prosecutions. See United States v. Stanfill El, 714 F.3d 1150, 1155 (9th Cir. 2013) ("right to a jury trial under the Seventh Amendment did not apply" to a "criminal prosecution"). Indeed, the Ninth Circuit has long since rejected the "argument that the MVRA violates the Seventh Amendment's guarantee of trial by jury." United States v. Dubose, 146 F.3d 1141, 1148 (9th Cir. 1998), as amended on denial of reh'g (Aug. 31, 1998); Stanfill El, 714 F.3d at 1154 ("[R]estitution as part of a criminal sentence [does] not implicate the Seventh Amendment."). And Kim fails to cite a case that adopts his reasoning. Consequently, restitution here does not violate the Seventh Amendment.

**B. Property**

Next, Kim asks the Court to construe the term "property" in Section 3663A(b)(1)(B) of the MVRA as not covering cryptocurrency. Opp'n at 8–10. Specifically, Kim argues that the words "damage" and "destruction" in the provision must mean that the property at issue must be tangible. Id. at 8. According to Kim, cryptocurrency cannot be contemplated under this statute as it is intangible and lacks the

intrinsic value of other tangible property. Id. at 8–9. But Kim's interpretation is at odds with Ninth Circuit precedent and statutory context.

Section 3663A(b)(1)(B) covers cryptocurrency as property. As the Government points out, in addition to "damage" and "destruction," the provision also uses the term "loss," which plainly applies to intangible property such as cryptocurrency. Reply (dkt. 477) at 6 (citing 18 U.S.C. § 3663A(b)(1)). The Ninth Circuit's decision in In re Davis is instructive. There, the Ninth Circuit held that "loss" in a different provision of the MVRA covered stolen cryptocurrency. In re Davis, 146 F.4th 710, 727 (9th Cir. 2025) ("The word 'losses' in § 3664(d)(5) encompasses the value of the stolen Ether."). In reaching its conclusion, the court noted that the MVRA is a "statute that mandates compensation to victims for all sorts of losses resulting from criminal offenses." Id. And that "even for some property offenses . . . the victim's only 'loss' is lost value." Id. This reasoning is certainly applicable in the instant case and what is considered "property" under Section 3663A(b)(1)(B).

Further, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." West Virginia v. EPA, 597 U.S. 697, 721 (2022) (quoting Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809 (1989)). Subsection (c)(1) makes the statute applicable in sentencing proceedings for convictions of "an offense against property . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). Based on that provision, courts order restitution for wire fraud. See United States v. Gagarin, 950 F.3d 596, 607 (9th Cir. 2020) (affirming restitution order in wire fraud case). As the Government notes, it would be nonsensical for "property" in subsection (b) to mean something different from the intangible property protected in wire fraud cases in subsection (c). See Reply at 6; see also United States v. Shih, 73 F.4th 1077, 1101 (9th Cir. 2023) ("[C]onfidential information" is "a cognizable property interest under the mail and wire fraud statutes."). Indeed, other courts have ordered restitution for cryptocurrency as property under the MVRA. See, e.g., United States v. Hared, No. 3:19-CR-00040-WHO-1, 2026 WL 206711, at *7 (N.D. Cal. Jan. 27,

United States District Court
Northern District of California

2026) (no consequence that "this case concerns a different type of property—cryptocurrency"); United States v. Karony, 2026 WL 1283970, at *3 (E.D.N.Y. May 11, 2026) (victims could recover the loss of cryptocurrency as property).

Accordingly, the Court declines to adopt Kim's reading of the statute.

**C. Value**

Kim argues that, even if cryptocurrency is property under the MVRA, the Court should value the cryptocurrency at "what they spent for it," instead of the value at sentencing as the Government requests. Opp'n at 11. Although he believes "cryptocurrency is worthless," Kim contends that victims should not "receive a windfall" through the significantly increased value of the cryptocurrency, especially because "it is impossible to know" what they would otherwise have done with it. Id. The Court disagrees. Kim's position is contrary to the point of restitution.

Where the return of property is "impossible," district courts must order a defendant to "pay an amount equal to the greater of the value of the property on the date of the damage, loss, or destruction[,] or the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B)(i)(I)–(II). Courts have a "degree of flexibility in calculating the value of property when constructing an appropriate restitution award." United States v. Kaplan, 839 F.3d 795, 801 (9th Cir. 2016) (district courts have "discretion to determine the proper method of calculating the value" of property). In exercising this discretion, a court must keep the remedial purpose of the MVRA in mind, which is "to fully compensate victims for their losses, and to restore victims to their original state prior to the criminal act." Id. at 800. In seeking to deprive his victims of the value of their cryptocurrency, Kim's position does not "comport with the congressional intent to make the victim whole." See id. at 802.

The value of the cryptocurrency on the date of sentencing appropriately compensates Kim's victims. "[F]air market value generally provides the best measure to ensure restitution in the 'full amount' of the victim's loss." Id. "Fair market value will almost always be an accurate measure of the value of a fungible commodity with a viable

market." Id. As the Government points out, cryptocurrency trades in efficient marketplaces where prices in U.S. dollars can be tracked in real time. Reply at 7. But Kim argues that the Court should not grant his victims the value of the cryptocurrency at the date of sentencing because it would be a larger amount than what they paid for, especially as he believes cryptocurrency has no intrinsic value. Opp'n at 11. That position is contrary to law and logic.

Given that fair market value is an appropriate measure of loss, the Court retains no discretion to grant Kim's victims a lesser award. In fact, the MVRA compels the greater award. 18 U.S.C. § 3663A(b)(1)(B)(i) (requiring restitution at the greater of the value of the property on the date of loss or the date of sentencing). And while Kim may believe that cryptocurrency is a highly speculative asset without inherent value, his belief does not change the reality that markets have valued it. After all, the value of cryptocurrency—and really anything—is what we are willing to exchange for it.[4]

It is also of no consequence that it is impossible to know what the victims would have done had they retained their cryptocurrency. "The purpose of restitution is to put the victim back in the position [it] would have been but for the defendant's criminal conduct." Gossi, 608 F.3d at 581. Here, fair market value puts Kim's victims in the position they would have been in on the date of sentencing if Kim's conduct had not incurred their losses. Essentially, they receive the value of their cryptocurrency as if they never lost it. Kim—not the victims—bore the risk that the value of the stolen cryptocurrency would significantly increase.

The Court cannot award Kim's victims the lesser value of their loss.

### D. Eighth Amendment

Kim also repackages his arguments on the proper value of loss as an Eighth

---

[4] The "Greater Fool Theory" provides an explanation for this cryptocurrency phenomenon. Sometimes people aim to make money by purchasing overvalued assets if they believe the assets can be resold at an even higher price—to the "greater fool." See DeJuawn "DJ" Griffin, Mining the NFT Goldrush: A Prospective Guide to Drafting NFT Contracts, 74 MERCER L. REV. 693, 693–96 (2023) (discussing the "Greater Fool Theory" in the market for nonfungible tokens).

Amendment challenge. Opp'n at 12–14. He argues that the Government's proposed restitution would be "grossly disproportional" to the victims' out-of-pocket losses and his culpability, constituting an excessive fine under the Eighth Amendment. Id. at 12. The Court disagrees.

The Ninth Circuit has already spoken on this issue. In Dubose, the court held that the MVRA does not "violate[] the Eighth Amendment's proscription against excessive fines." 146 F.3d at 1146. That is because "proportionality is inherent in a MVRA restitution order." Id. at 1145. "Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order." Id. (internal citation omitted). Moreover, "in the restitution context, because the full amount of restitution is inherently linked to the culpability of the offender, restitution orders that require full compensation in the amount of the loss are not excessive." Id. at 1146.

Kim seeks to distinguish Dubose by noting that the restitution there was from arson and bank robbery, while the requested restitution here is based on "the daily trading price of the cryptocurrency years after the offense" when the price is high. Opp'n at 14 (emphasis in original). But this argument was already rejected by another court in this District regarding cryptocurrency. In Hared, the defendant also argued that the $7 million dollar restitution based on the value at the time of sentencing was "grossly disproportionate to the victim's out of pocket losses and to [the defendant's] modest gains from the crime." 2026 WL 206711 at *6. Additionally, the defendant asserted that restitution was "fatally speculative given that it is unlikely that the victims would have held onto the Ether for the full seven years in light of the extreme volatility in its value during that time." Id. The Hared court, relying on Dubose, held that the fluctuating nature of cryptocurrency had no impact on restitution, which still had to be tied to the value of the specific property at the time of sentencing. Id. at *7.

That same reasoning applies here. As the Government notes, it was Kim that "prevented the victims from taking part in the appreciation of the asset that they lost

through the fraud." Reply at 8. It is not a windfall or grossly disproportionate for the victims to be compensated for the amount of cryptocurrency they had before Kim's fraud, even if the value of that cryptocurrency has since greatly increased. See Kaplan, 839 F.3d at 800 ( The "purpose of the MVRA is to fully compensate victims for their losses, and to restore victims to their original state prior to the criminal act.").

Consequently, the Court rejects Kim's argument under the Eighth Amendment.

**E. Specific Victims**

Kim makes objections as to specific victims—from improper award calculation to lack of entitlement to restitution. Opp'n at 14–27.[5] The Court addresses each argument by victim.[6]

**1. Victims 1 and 3**

Kim makes the same arguments for Victims 1 and 3. First, he argues that restitution should be limited to the counts of conviction, not from "every loan they made" to him. Opp'n at 20. Second, he asserts that the two victims engaged in illegal acts, such as usury, and cannot be entitled to restitution as victims. Id. at 22–25. And third, Kim argues that his settlement offers should reduce restitution.[7] The Court disagrees.

The MVRA does not contain the counts of conviction limitation Kim seeks. Indeed, he fails to cite any authority in support of his position. On the other hand, the MVRA provides that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," restitution is owed to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). "Accordingly, when the crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution

[5] The parties also agree on some issues. They agree on the restitution awards for Victims 2, 10, and 11. Reply at 8–14.

[6] The Court does not refer to the victims by name—to preserve confidentiality—and uses the numbering for the individuals proposed by the Government.

[7] Kim also argues (again) that cryptocurrency has no intrinsic value and that victims should not get a windfall from the increased value of the cryptocurrency. Opp'n at 25. As already discussed, the Court rejects that argument.

'on related but uncharged conduct that is part of a fraud scheme,' and is not limited to 'the harm caused by the particular counts of conviction.'" United States v. Lo, 839 F.3d 777, 788 (9th Cir. 2016) (quoting United States v. Thomsen, 830 F.3d 1049, 1065–66 (9th Cir. 2016)). As the Government points out, Kim received all his loans from the victims "through the fraud scheme he was convicted of committing." Reply at 9. Kim may not limit the restitution awards of Victims 1 and 3 in the way he desires.

Kim's argument about purported illegal acts is also unavailing. He asserts that "[p]articipants in illegal activity are generally not entitled to restitution." Opp'n at 22. But the case he cites does not support that proposition. In United States v. Lazarenko, the court specifically held that, absent exceptional circumstances, a "co-conspirator cannot recover restitution." 624 F.3d 1247, 1249 (9th Cir. 2010) (emphasis added). Both victims here were victims, not co-conspirators. Moreover, even if the victims' loans to Kim were usurious, they would only be prevented from recovering interest on their principal, which the Government already does not request. See Hardwick v. Wilcox, 11 Cal. App. 5th 975, 979 (Cal. Ct. App. 2017) ("When a loan is usurious, the creditor is entitled to repayment of the principal sum only."); Reply at 9 (not seeking interest for any victim). Likewise, Kim's descriptions of Victim 1's potential bad faith in their dealings do not relate to the restitution award at issue. See Opp'n at 24 (describing Victim 1's desire to "take advantage of Mr. Kim").

Further, as the Government notes, Mr. Kim's prior offers to settle their civil claims do not affect the criminal restitution here. See Reply at 9. The restitution awards could only have been offset if Kim returned the stolen cryptocurrency or money to the victims. See 18 U.S.C. § 3663A(b)(1)(B)(ii) (restitution offset by the value of any part of the property that is returned). And that is not the case here.

**2. Victim 4**

For Victim 4 (an entity), Kim contends that the Second Superseding Indictment did not contain—indeed, omitted—a count alleging wire fraud against the victim. Opp'n at 19. And that the representative of Victim 4 who signed the loans with Kim was not the

one who testified or submitted a claim form on behalf of Victim 4. Id. But as previously discussed, the MVRA permits victims of uncharged conduct who were harmed by a scheme to receive restitution. Further, Kim does not provide any authority that states that the representative of an entity that signed relevant loans must be the one who signs the claim form—or the one who testifies as to the entity's harm.

**3. Victim 5**

Kim objects that Victim 5 is not entitled to legal fees of $2,000 stemming from a subpoena for documents as that "is not the proper subject of restitution." Opp'n at 16 n.9. However, "[t]he law is settled that a court may include attorneys' fees in a restitution order when the victim incurred the expenses to participate in law enforcement's investigation and prosecution of a defendant." United States v. Eyraud, 809 F.3d 462, 467 (9th Cir. 2015); see 18 U.S.C. § 3663A(b)(4) (reimbursement for expenses during participation in investigation, prosecution, or attendance at proceedings). For Victim 5, the subpoena giving rise to the fees was plainly part of the "investigation or prosecution" of Kim. Accordingly, the legal fees are appropriately included as restitution.

**4. Victim 6**

Kim argues—without explanation—that Victim 6 is also seeking interest on his loans. Opp'n at 16. He also asserts that Victim 6 has profited from his prior loans to Kim and should be required to repay his profit. Id. But the restitution award is only for the 1.2495 Bitcoin Victim 6 was owed, not interest. Dkt. 471-1, Ex. 6. Further, Victim 6's prior profit from Kim's scheme does not change the fact that he was also harmed by the same scheme. Victim 6 remains a victim entitled to restitution under the MVRA. See 18 U.S.C. § 3663A(a)(2) (defining victim as a person harmed by a scheme).

**5. Victim 15**

Kim objects that the proposed restitution for Victim 15 is more than he requested—and that it has calculation errors. Opp'n at 13. Victim 15 requested $408,079, believing that "restitution is based on historical value." Dkt. 463-17, Ex. 15. He did, however, note that the actual value of the lost cryptocurrency was over $4.2 million as of the date of his

statement. Id. Regardless of what Victim 15 believed his loss was, it is not up to him to decide. The MVRA clearly states that an award of full restitution is mandatory. See 18 U.S.C. § 3664(f)(1)(A) ("court shall order restitution to each victim in the full amount of each victim's losses"). "Although the victim is the beneficiary of restitution, the victim has only limited rights and may not dictate whether restitution is appropriate or the amount." United States v. Hankins, 858 F.3d 1273, 1278 (9th Cir. 2017). Accordingly, it is irrelevant what Victim 15 requested—and he himself noted that his true loss was higher.

**6. Payment Priority**

Kim also recommends that the Court prioritize the smaller lender victims for payments over the sophisticated, wealthy lenders. Opp'n at 27. He cites the concern that pro rata allocation would basically eliminate the chance of meaningful recovery by the smaller lenders because the largest restitution awards are in the tens of millions of dollars. Id. In the alternative, Kim requests that each restitution payment be divided equally among the victims. Id. at 28. The Government agrees with Kim's concerns and proposes that the Court proceed with Kim's alternative request for equal distribution. Reply at 8.

The Court has the discretion to fashion different payment schedules when there is more than one victim. See 18 U.S.C. § 3664(i). The Court can consider "the type and amount of each victim's loss" and the "economic circumstances of each victim." Id. Because the Court does not have sufficient information about the financials of all the larger lenders[8], it requires division of payments equally among the victims. That way, the smaller lenders will not be denied meaningful recovery as if the payments were on a pro rata basis.

## III. CONCLUSION

For the foregoing reasons, the Court rejects Kim's objections and requires the parties to confer about the victims where calculations and proof are in dispute. If there are

[8] While Kim points to Victim 9's significant earnings in recent cryptocurrency trading and the chance that Victim 3 retained significant assets, the Court still does not have information on their actual financials, aside from general assumptions and speculation. See Opp'n at 27–28.

still outstanding disputes, the Court will hear them.

**IT IS SO ORDERED.**

Dated: July 16, 2026

CHARLES R. BREYER
United States District Judge